# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CAROL J. HILL,                )
                              )
       Plaintiff,        )
                              )
v.                            )  Case No. CIV-14-115-FHS-SPS
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of the Social )
Security Administration,      )
                              )
       Defendant.        )

## REPORT AND RECOMMENDATION

The claimant Carol J. Hill requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 30, 1961, and was fifty-one years old at the time of the administrative hearing (Tr. 126, 268). She completed twelfth grade and has worked as a kitchen helper and dishwasher (Tr. 47, 144). The claimant alleges an amended onset date of May 4, 2011, due to panic disorders, depression, anxiety, headaches, and bi-polar disorder (Tr. 144, 274).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 1, 2011. Her application was denied. ALJ J. Frederick Gatzke conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated January 29, 2013 (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b), except that the claimant was limited to one to two step jobs that require no more than incidental contact with the public (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was

nevertheless not disabled because there was work in the regional and national economy that she could perform, *i. e.*, housekeeper and garment bagger (Tr. 20).

## Review

The claimant's sole contention of error is that the ALJ failed to properly analyze the opinion of state reviewing physician Dr. Phillip Massad, Ph.D. The undersigned Magistrate Judge agrees that the ALJ did not properly assess Dr. Massad's opinion, and the case should be reversed.

The ALJ determined that the claimant had the severe impairments of arthritis, bipolar disorder, and anxiety. Consultative examiner Kathleen Ward, Ph.D., conducted a mental status examination of the claimant on June 24, 2011 (Tr. 199). She noted the clamant appeared mildly nervous, and had mild depression and a mildly dysthymic affect with some brief brightening (Tr. 200-201). Her intellect was estimated to be in the average range, she appeared to have some deficits in social judgment and problem solving, and it appeared she was not incompetent to handle any funds awarded (Tr. 201). Dr. Ward assessed the claimant with bipolar disorder, NOS, and stated that the prognosis would improve with a return to mental health care but noted that affordability was a barrier and referred her to Carl Albert Mental Health (Tr. 202).

State reviewing physician Dr. Massad completed a Psychiatric Review Technique form on August 30, 2011 (Tr. 215-228). Dr. Massad found that claimant's mental impairments consisted of a depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or

retardation, and feelings of guilt or worthlessness, as well as PTSD (Tr. 218, 220). As a result, Dr. Massad found that claimant was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with insufficient evidence related to episodes of decompensation (Tr. 225). Dr. Massad also completed a Mental RFC Assessment and found that claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 211-212). In his written comments, Dr. Massad wrote that claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a simple, routine, no public work situation (Tr. 213).

On July 27, 2012, Dr. Teresa Farrow, M.D., completed a Mental Impairment Questionnaire, assessing the claimant with bipolar, depressed, severe with psychotic features; panic disorder with agoraphobia; and generalized anxiety disorder (Tr. 232). Dr. Farrow noted the claimant was in treatment, but was responding slowly, and that her depression and anxiety made pain worse and "vice versa" (Tr. 233). She stated that the claimant would be absent from work "way more" than three times a month, and that she would have difficulty working a regular job due to her problems with depression (Tr. 233-234). She stated that the claimant's restrictions had been severe since 2008, that the claimant had been receiving treatment at her clinic off and on since 2002, and that she had been receiving steady treatment since October 2011 (Tr. 232-234). She assessed the

claimant with slight restrictions in activities of daily living, and extreme limitations in maintaining social functioning and concentration, persistence, or pace (Tr. 234).

The claimant argues that the ALJ failed to properly analyze Dr. Massad's opinion, in that the ALJ failed to acknowledge Dr. Massad's findings that the claimant was markedly limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions in his RFC findings, and further improperly rejected his opinion that she could relate to supervisors and peers on a superficial work basis. Social Security Ruling 96–6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ gave great weight to Dr. Massad's written findings that the claimant could perform simple tasks with routine supervision but could not relate to the general public, but failed to explain how his assigned RFC accounted for her limitation of only relating to supervisors and peers on a superficial work basis.

Furthermore, he failed to properly assess Dr. Farrow's opinion when he assigned it little weight based largely on a lack of treatment relationship, which ignored the fact that Dr. Farrow had the benefit of longitudinal treatment records going back to 2002 (Tr. 18-19). *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government argues that because the ALJ limited the claimant to one to two step jobs that require no more than incidental contact with the public, he *did* incorporate Dr. Massad's finding that the claimant could relate to supervisors and peers on a superficial work basis. Even if the Court agreed with that argument, the interaction requirements of these two jobs was not properly addressed. The VE identified the jobs of housekeeper, DICOT § 323.687-014, and garment bagger, DICOT § 920.687-018, as work the claimant could perform with the associated RFC. Both occupations have job descriptions indicating that interaction with supervisors is "not significant," *see* DICOT §§ 323.687-014, 920.687-018, and the Commissioner therefore asserts that any would be harmless. But the claimant correctly notes that this description does not address the claimant's interaction with co-workers and thus the Commissioner's post-hoc rationalization will not be adopted. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th

Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir.1999). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Accordingly, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P.

72(b).

    **DATED** this 10th day of September, 2015.

                                            _____

                                            **STEVEN P. SHREDER**
                                            **UNITED STATES MAGISTRATE JUDGE**